Submitted July 15, reversed December 9, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KIM ALLEN WILLIAMS,
*Defendant-Appellant.*

Crook County Circuit Court
05FE0256; A136232

222 P3d 31

Garrett A. Richardson filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Sally L. Avera, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals a judgment of conviction for second-degree burglary, ORS 164.215, and first-degree theft, ORS 164.055. He contends that the trial court erred in denying his motion to dismiss the charges that led to those convictions, because the state did not commence the prosecution of the charges within the time limit established by the applicable statute of limitation. We agree with defendant and reverse.

The crimes for which defendant was convicted are felonies subject to a three-year statute of limitation. *See* ORS 131.125(6)(a); ORS 164.055(3); ORS 164.215(2). That means that the state had to commence the prosecution of those crimes within three years of the date on which they were committed. *See* ORS 131.105; ORS 131.145(1). The state alleged in the indictment against defendant that he committed the burglary on or about November 20, 2002, and the theft between November 20, 2002 and January 9, 2003. The grand jury indicted defendant for the crimes on November 17, 2005—before the three-year limitation period had elapsed—and the state filed the indictment in the circuit court that day. The court issued an arrest warrant for defendant on the charges on March 7, 2006, after the last possible date on which to commence the prosecution of either charge.

Defendant was arraigned on the charges on May 3, 2006. He thereafter moved to dismiss the charges, arguing that the prosecution of them had commenced with the issuance of the arrest warrant, which had occurred after the expiration of the three-year time limit to commence the prosecution of the charges. The state countered that the prosecution had commenced with the issuance of the indictment, which had occurred within the time limit. The trial court agreed with the state and denied defendant's motion.

ORS 131.135 states that, for purposes of commencing a criminal prosecution within the applicable limitation period, "[a] prosecution is commenced when a warrant or other process is issued, provided that the warrant or other process is executed without unreasonable delay." According to the state, an indictment constitutes "other process" under the statute and, hence, the state commenced its prosecution

of the charges against defendant within the applicable time limit. We disagree.

Process, for purposes of initiating a court action against a person, is commonly understood to mean a warrant, summons, or writ, that is, a legal instrument that requires the person to appear in court to respond to a charge or complaint. *E.g.*, *Black's Law Dictionary* 1242-43 (8th ed 2004). The phrase "warrant or other process" in the statute supports that understanding, because it implies that the "other process" to which the statute refers are things akin to warrants.

An indictment, in contrast, is a legal instrument that states the charges to which a person must respond *after* being brought into court through the execution of a warrant or other process. *See id.* at 788. The proviso in the statute, which refers to executing the warrant or other process, suggests just such a distinction between an indictment and the process to which the statute refers. In common legal parlance, one executes a warrant, not an indictment.[1]

Were there any doubt that an indictment is not included in the process to which ORS 131.135 refers as commencing a prosecution for purposes of the limitation statutes, that doubt is conclusively dispelled by the history behind the enactment of the statute. The legislature enacted ORS 131.135 as part of the 1973 revision of the Oregon Criminal Procedure Code. The statute represented a sharp break from the prior approach to the commencement of a criminal prosecution under the limitation statutes. Under the prior approach, a criminal action was

> "commenced [for limitation purposes] * * * when the indictment is found and filed with the clerk of the court or * * * when the indictment or complaint is filed or lodged in the court or with the officer having jurisdiction[.]"

---

[1] The foreperson of a grand jury will sign, that is, execute, an indictment, *see* ORS 132.400, but that is not the type of execution to which the statute refers. Among other things, *that* execution of an indictment is coincident with the issuance of the indictment; it is not an act that occurs *after* the indictment is issued by the grand jury.

*Former* ORS 131.130 (1971), *repealed by* Or Laws 1973, ch 836, § 358; *see also State v. Miller*, 254 Or 244, 250-52, 458 P2d 1017 (1969) (criminal action commenced under *former* ORS 131.130 on filing of information after defendant waived indictment). In other words, a criminal action was commenced by filing with a court an instrument that charged a defendant with the commission of a crime.

The Criminal Law Revision Commission that proposed the 1973 Criminal Procedure Code decided to shift from the filing of an accusatory instrument to the issuance of an arrest warrant or similar process as the act that would commence a criminal prosecution under the limitation statutes. It did that for two reasons: First, it believed that an important principle behind the limitation statutes was to give a defendant the ability to obtain evidence and to otherwise respond to charges before the passage of time impaired the defendant's ability to do that. In its view, that principle was best served by tying the commencement of a prosecution to the issuance of an arrest warrant or similar process, because the issuance of such process is the step that is taken to bring a person to court to respond to criminal charges. Issuance of an arrest warrant generally follows the filing of an accusatory instrument and, compared to the filing of an accusatory instrument, issuance of an arrest warrant is more likely to lead the defendant to be brought to court to learn of the charges and of the need to respond to them.

Second, the commission drafted the limitation provisions of the new criminal procedure code before it drafted the provisions on the form and use of accusatory instruments. In light of that sequence, it settled on using the issuance of an arrest warrant or other process as the step by which to commence a criminal prosecution for limitation purposes, rather than the filing of an accusatory instrument, because it could complete its work on the limitation provisions without waiting to address the provisions on accusatory instruments.

The foregoing explanation of the reasons behind the decision to shift from the filing of an accusatory instrument to the issuance of an arrest warrant or other process as the

act that commences a criminal prosecution for limitation purposes is confirmed by the minutes of the commission subcommittee that prepared the limitation provisions that the legislature adopted. At the subcommittee meeting on the limitation provisions, the commission staff member who drafted the provisions, Donald Paillette, described the law that predated the draft provisions, that is, the law that treated the filing of an accusatory instrument as the act that commenced a criminal prosecution for limitation purposes. Subcommittee Chairman John Burns then

> "directed attention to the language 'warrant or other process is issued' found in section 3 [the provision that was enacted in 1973 as ORS 131.135] and asked the meaning of the phrase 'other process'. *Would the return of an indictment be 'other process'? Mr. Spaulding's understanding of section 3 was that a prosecutor would not be permitted to file an indictment and just let it [lie] for a year; he would have to obtain a warrant and it would have to be executed without unreasonable delay.*

> "Chairman Burns suggested that perhaps the legislative history on the draft should reflect the intent that a 'detainer' be within the meaning of 'other process'. *Rep. Young asked if an 'indictment' would be 'other process' and Chairman Burns said he did not believe so.*

> "*Mr. Spaulding pointed out that under the present statute a prosecutor is able to file an indictment and stop the running of the statute of limitations and this does provide a time during which he can negotiate with the defendant and perhaps be talked into quashing the indictment and never issuing a warrant and arresting the defendant. This would not be possible under the proposed draft.*

> "Mr. Paillette, complying to a request by Mr. Chandler to restate his reasons for drafting section 3, stated he thought it advisable to avoid use of terms such as 'indictment', 'information', etc., until it was determined what language was to be used in the procedure code. His intent, he continued, was to facilitate law enforcement, not impede it, and to give adequate notice to the defendant. It seemed to him the [Model Penal Code] approach was a reasonable one. One of their primary concerns was notice to the defendant."

Minutes, Criminal Law Revision Commission, Subcommittee No 1, Nov 19, 1970, 14 (emphasis added).

The subcommittee minutes accurately reflect the discussion that took place at the meeting, as established by the audio record of it. Commission member Bruce Spaulding began the discussion of the draft by asking Paillette to describe the existing law, under which a prosecution was commenced by filing an accusatory instrument with a court or judicial officer. Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, Nov 19, 1970, Tape 22, Side 2. After Paillette did that, Burns asked, "Now, what's process mean?" Commission member Robert Chandler responded, "Citation[,]" which led Burns to agree:

"Like a citation in lieu of arrest. Alright. What about, uh, the return of an indictment? Would that be other process?"

*Id.* Those questions led to a discussion that culminated with statements by both Spaulding and Chandler that make clear that the answer to Burns's question whether an indictment would be "other process" was, "No."

"Mr. Spaulding: But, if this is adopted, [a district attorney would] have to not only file the indictment, but * * * he would have to get a warrant or other process and reasonably pursue [it], and I think this is right * * *.

"Chairman Burns: You think this is right?

"* * * * *

"Mr. Spaulding: Yeah, I do.

"Mr. Chandler: The only time it's going to be any real problem is when the, when the indictment is handed down the last day of the [time limit]; the district attorney is going to have to work after supper that night and get his warrant out * * *."

*Id.*

After a brief exchange between Burns and Chandler that sought to make clear that a detainer was intended by the subcommittee to be "other process," commission member Thomas Young asked again whether an indictment would be other process. Burns responded, "No, I don't think so," and then added: "I think we're going one step further than indictment * * *." *Id.*

Later in the discussion, Chandler asked Paillette to explain again why he had proposed the change from filing an accusatory instrument to issuing a warrant or other process. Paillette responded, first, that he

"thought it was a good idea to stay away from the use of words like indictment, information, etc., [until] we knew what we were going to use. * * * I wasn't trying to, uh, impede law enforcement. In fact, I thought this would facilitate it as well as giving adequate notice to the defendant because, uh, it says in fact that you get a, you get a warrant, and it doesn't matter whether you, whether you file an indictment or a complaint or an information because it doesn't even mention those words. You just get your warrant and the means with which you get the warrant [are] immaterial."

*Id.*

Significantly, a commission member responded that it would be possible to draft language that would refer generally to accusatory instruments, without the need to identify specific types of them, if the filing of an accusatory instrument *were* an appropriate way to commence a criminal prosecution for purposes of the limitation statutes. Paillette agreed that it would be possible to do that, if the commission thought that filing an accusatory instrument should commence a prosecution for limitation purposes, but he had not done that. *Id.*

The subcommittee proceeded to discuss the implications of shifting from filing an accusatory instrument to requiring that a warrant or similar process be issued. In particular, they discussed how that would work when a defendant already was in jail or an agreement was reached between a district attorney and defense counsel for a defendant to surrender without the need to have a warrant issued. Their understanding was that a defendant could agree to waive the requirement that a warrant be issued, which they assumed would mean that the prosecution would be considered to have been commenced within the time limit even though no warrant or other process had been issued:

"Mr. Spaulding: * * * [I]f the [district attorney] cannot stop the running of the statute without issuing and executing a warrant, then he is going to issue a warrant every time when the statute has practically run.

"Mr. Chandler: I don't think so, necessarily. If you talk about this case [a hypothetical case described by Paillette in which a district attorney and defense counsel agree to have a defendant surrender without a warrant], I think that * * * you get the same protection, the district attorney has got the same protection in there that the defendant's got in the other situation.

"* * * * *

"Mr. Paillette: The only time [a district attorney is] not going to ask for a warrant.

"Mr. Chandler: * * * [A]sk for it, [is when] the defense is involved in it and * * * [the defendant] can't complain [about] an unreasonable delay at that point.

"Mr. Paillette: Yeah, the only time [a district attorney is] going to not ask for a warrant is either * * * in the case where you got a deal with the defense attorney, he says, 'I'll bring my guy in, let me know when he is indicted and I'll bring him in.' So you say, 'Okay, George, bring him in Monday morning.' So you got it there, and the only other time would be if you got a defendant incarcerated someplace else.

"Mr. Chandler: Several months of discussions can take place and the defense can't complain that this became an unreasonable delay when they participated in them and initiated them.

"Mr. Spaulding: Yeah, I think that is something that the defense could definitely waive. The time for indictment, a defendant can't waive the way it is now. I, I agree. I think that's right."

*Id.* At the conclusion of that discussion, the subcommittee voted to approve the draft language.

In sum, the minutes and audio record of the subcommittee's discussion of the language that became ORS 131.135 confirm that the subcommittee understood that the provision would require the state to issue an arrest warrant or similar process in order to commence a criminal action for purposes

of the limitation statutes, unless the requirement was waived by the defendant or otherwise met. Issuing and filing an accusatory instrument would no longer suffice to do that. And, consistent with that discussion and understanding, an accusatory instrument, such as an indictment, would *not* constitute "other process" for purposes of the statute.

A review of the Model Penal Code provision on which Paillette relied in drafting ORS 131.135 supports that understanding as well. That provision specified two alternative ways to commence a criminal action for limitation purposes. It said that

> "[a] prosecution is commenced *either* when an indictment is found *or* when a warrant is issued provided that such warrant is executed without unreasonable delay."

Model Penal Code § 1.07(5) (Tentative Draft No 5, Apr 27, 1956) (emphasis added). In the view of the American Law Institute, which promulgated that version of the Model Penal Code, each of the two alternatives was thought to serve

> "the basic purpose of a statute of limitations[, which] is to insure that the accused will be informed of the decision to prosecute and the general nature of the charge with sufficient promptness to allow him to prepare his defense before evidence of his innocence becomes weakened with age."

*Id.* § 1.07 comment at 24-25.

Because each alternative was thought to be independently sufficient, Paillette presumably concluded that he could draft a provision that used only one of the two alternatives as the basis on which to commence a prosecution for limitation purposes. Indeed, that is what he did by drafting ORS 131.135 to make the issuance of a warrant or similar process the act that commences a prosecution for limitation purposes.

Although the commission minutes and other documents do not directly address the reason that Paillette added the phrase "or other process" to the language used in the warrant alternative in the Model Penal Code, we assume that it was to reflect the fact that there are instruments other than warrants, such as citations, *see* ORS 133.055 to 133.076, by which people can be required to appear in court to respond to

criminal charges. The discussion at the subcommittee meeting about the role of citations in lieu of arrest and of detainers supports that understanding. As the discussion makes clear, however, the language was *not* added to bring *within* the warrant alternative of the Model Penal Code the alternative principle by which a criminal action is commenced for limitation purposes by filing an indictment or other accusatory instrument.

Finally, the commission's official commentary to the provision that became ORS 131.135 bears out the foregoing conclusions. It first notes that the provision would change the existing law under which a criminal action was commenced for limitation purposes by finding and filing an indictment or by filing a complaint. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 9, 7 (Nov 1972). It then explains:

> "The draft takes the Model Penal Code view that a warrant of arrest is sufficient. In so doing, it proceeds on the assumption that the basic purpose of a statute of limitation is to insure that the accused will be informed of the decision to prosecute and the general nature of the charge with sufficient promptness to allow him to prepare his defense before evidence of his innocence becomes weakened with age. His further right to have the matter promptly disposed of by trial is not dealt with here.

> "Both the finding of an indictment and the issuance of a warrant of arrest require a formal decision by the prosecution as to the general nature of the charge and the identity of the accused. Both will ordinarily come to the attention of the accused.

> "The [American Law Institute] commentary notes that there is a danger that a warrant may be issued and allowed to lie around without diligent effort to execute it. The draft requires that the warrant be executed within a reasonable time."

*Id.*

When the legislature adopted the 1973 Criminal Procedure Code, it did not spend much time discussing the provision that became ORS 131.135. However, the minutes and audio record of the consideration of the provision by the

Senate and House Judiciary Committees confirm that the legislature understood that the provision would work the way that the Criminal Law Revision Commission intended it to work, that is, to make issuance of a warrant or similar process the act that commences a prosecution for limitation purposes, rather than the filing of an indictment or other accusatory instrument.

The Senate Judiciary Committee considered the provision first, and Senator Burns, the chair of the Criminal Law Revision Commission subcommittee that developed the provision, attended the work session at which the provision was discussed. Senate Judiciary Committee Chair Elizabeth Browne began the discussion by saying that she was "confused about this, uh, commencing an action with the issuance of a warrant. Where does that come [from]?" Tape Recording, Senate Judiciary Committee, SB 80, Mar 7, 1973, Tape 8, Side 1. Paillette responded:

> "Yes, [a] prosecution is commenced when a warrant * * * or other process is issued. That is new, yes. And, * * * it does work a change."

*Id.* In response to a question from the chair about the existing law, Paillette proceeded to compare the existing and the proposed law:

> "Yes, [the existing law] states it's commenced when the indictment is found and filed with the clerk of the court or when the indictment or complaint is filed and lodged in the court or with the officer * * * having jurisdiction. And, as we indicate, [the commission] adopts the Model Penal Code view that a warrant of arrest * * * is sufficient for the purposes of commencing the action."

*Id.*

After a further discussion about the difference between the existing law and the proposed change in it, Browne asked, "Why are you changing it?" Paillette responded:

> "We felt that this was a more reasonable balance. Uh, * * * that when the warrant is issued, that should toll the statute, but, at the same time, uh, there should be some

provision in here to [deal with] stale warrants * * * where no attempt, uh, has been made to execute on them."

*Id.*

Browne wondered again why the law needed to be changed and asked what the "practical effects will be?" Paillette responded that the practical effects would probably be negligible, followed by a somewhat confusing comparison of the existing and proposed law. Burns then interjected:

"What you're saying is, under the present law, it's commenced when the indictment is * * * found and filed, uh, and here * * * it's commenced.

"Chair Browne: When the warrant is issued.

"Senator Burns: When the warrant is issued, uh, whether that's a warrant of arrest pursuant to an information or whether it's a warrant of arrest pursuant to * * * an indictment. But you put the qualification on that the warrant has to be executed * * * without unreasonable delay. And [the proposed change] protects against the situation where you file an indictment and, uh, don't issue a warrant on it and then come back six months later."

*Id.*[2]

After discussing the execution of warrants for people in prison and the use of detainers, Browne asked for comments about the proposed provision, which led to the following exchange:

---

[2] The minutes of the committee's discussion are consistent with the audio record:

"Chairman Browne asked Mr. Paillette why that section of the law was changed. Mr. Paillette said that it seemed to be a reasonable balance. When a warrant is issued it tolls the statute but there needs to be a provision that provided for [stale] warrants that were not executed. He went on to say that the practical effects would probably be negligible. He said that presumably * * * once the warrant had been issued it would provide an incentive for the district attorney to execute it immediately.

"Senator John Burns commented that what Mr. Paillette was saying was that the old law commenced when the indictment was found and filed. The new law makes it commence when the warrant is issued."

Minutes, Senate Judiciary Committee, SB 80, Mar 7, 1973, 3-4 (capitalization modified).

"William Snouffer:   Well, Madame Chairman, I think it's a, it's a good policy decision. I think it's, * * *.

"Senator Burns:   Yeah.

"William Snouffer:   Something that should be adopted because it, it's designed, I think to.

"Senator Burns:   Expedite.

"William Snouffer:  Expedite matters and not, as Senator Burns said, not have an indictment returned and then, um, have the arrest warrant just not issued for six months or a year until some appropriate time and then bingo.

"Senator Burns:   Yeah.

"William Snouffer:   They issue a warrant and go after the guy. It would work a substantial hardship in many cases for the defendant that's arrested * * *."

*Id.* The Senate Judiciary Committee ultimately voted to recommend that the Senate approve the provision, which the Senate later did.

Viewed as a whole, the discussion before the Senate Judiciary Committee establishes that the committee was told by the person who drafted the provision, Paillette, and by the chair of the Criminal Law Revision Commission subcommittee that approved it, Burns, that the provision that became ORS 131.135 would require the state to issue a warrant or other process to commence a prosecution for purposes of the limitation statutes. Filing an accusatory instrument such as an indictment would no longer do that.

The record of the discussion of the provision by the House Judiciary Committee is consistent with that understanding. The committee minutes of that discussion provide:

"Rep. Hampton recalled that Mr. Lucas had been critical of the three year limitation in section 9. Mr. Paillette explained that under the definition of 'commencing a prosecution' in section 7 the prosecution would commence when a warrant was issued. It seemed highly unlikely that a case would languish for three years without some kind of warrant being issued. Rep. Hampton asked if a John Doe warrant would be covered under this statute and Mr. Paillette replied that it would. The provision, he said, was based on

> the Model Penal Code and the Commission believed it was a good idea to have some certainty after that long a period in cases where no prosecution had been commenced."

Minutes, House Judiciary Committee, SB 80, May 17, 1973, 3 (underscoring omitted). Ultimately, the legislature adopted the provision as part of the 1973 revision of the Oregon Criminal Procedure Code.

The text of ORS 131.135, and the history behind it, establishes that the issuance or filing of an accusatory instrument does not commence a prosecution for purposes of the limitation statutes. We do not mean to imply that the state must obtain and execute an arrest warrant or equivalent process in all cases in order to commence a prosecution within the limitation period. An appearance by a defendant in court in connection with the charges is sufficient to commence a prosecution even if no warrant is issued or executed. There is a sequence of steps through which a criminal prosecution can proceed at the trial level in Oregon. In a typical prosecution, the sequence begins with the filing of an accusatory instrument; proceeds through issuance of an arrest warrant, arrest, arraignment, entry of a plea, pretrial proceedings, trial, and verdict; and concludes with the entry of a judgment if the defendant is convicted. It is implicit in that sequence that, if the case has gotten past the warrant and arrest stage, it has been commenced for limitation purposes. Thus, for example, if a defendant agrees to appear voluntarily to respond to charges within the limitation period, the action is timely commenced. *See* Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, Nov 19, 1970, Tape 22, Side 2 (statement of Bruce Spaulding) (stating that a defendant could waive the requirement that a warrant be issued within the limitation period by appearing voluntarily).[3]

---

[3] That understanding also is consistent with the conclusion reached by the Supreme Court in a case under the prior statute, *Miller*, 254 Or at 250-52. As noted before, a prosecution was commenced under that statute by filing an indictment or complaint. The defendant in *Miller* agreed to waive indictment and proceed with the filing of an information. He then moved to dismiss the case after the limitation period had run, arguing that the prosecution had not been timely commenced because the state had not filed an indictment or complaint within the limitation period. The trial court denied the motion, and the Supreme Court affirmed, reasoning that the defendant's agreement to proceed by information rather than

■        We recognize that we have not been consistent in our understanding of ORS 131.135. For example, in *State v. Purdom*, 218 Or App 514, 522, 180 P3d 150, *rev den*, 345 Or 159 (2008), we correctly explained

> "that the words 'other process' in ORS 131.135 do not apply to the filing of an accusatory instrument but to other processes that are akin to the issuance of an arrest warrant or processes that occur after the filing of the accusatory instrument."

However, in *State v. Hampton*, 152 Or App 742, 745, 954 P2d 1267 (1998), we erroneously cited ORS 131.135 as support for the principle that, under the speedy trial statute, ORS 135.747, the prosecution in that case had commenced with the issuance of an accusatory instrument. As the Supreme Court later explained in *State v. Johnson*, 339 Or 69, 92, 116 P3d 879 (2005), the speedy trial statute itself provides that prosecutions commence for speedy trial purposes with the issuance of an accusatory instrument. Hence, our citation to ORS 131.135 as support for that principle in *Hampton* was both erroneous and unnecessary.

        We similarly erred in citing ORS 131.135 as support for our observation in *State v. Kayfes*, 213 Or App 543, 555 n 4, 162 P3d 308, *rev den*, 343 Or 690 (2007), that, for purposes of determining whether an amendment to OEC 804 applied in the case, the prosecution had commenced when the defendant was indicted. As in *Hampton*, the statement for which we cited ORS 131.135, *viz.*, that, for purposes of applying an OEC amendment, the prosecution had commenced with the filing of an indictment, was correct. *See, e.g.*, ORS 131.005(1), (3), (4), (9); ORS 132.410. We simply erred in citing ORS 131.135 as support for it.[4]

■        In summary, an Oregon prosecution is commenced for limitation purposes when a warrant or other process is

indictment meant that the prosecution had been timely commenced with the filing of the information.

        [4] As our discussion indicates, there are statutes that treat a prosecution as commencing when an accusatory instrument is filed. *E.g.*, ORS 131.005(3), (4); ORS 135.747. However, ORS 131.135 establishes that a prosecution commences *for limitation purposes* when a warrant or other process is issued, as long as execution of the warrant or other process is not unreasonably delayed.

issued, provided that the warrant or other process is executed without unreasonable delay. ORS 131.135. The indorsement or filing of an indictment or other accusatory instrument does not commence a prosecution for that purpose. Here, the warrant on the burglary and theft charges of which defendant was convicted was issued on March 7, 2006, which was beyond the three-year period in which the state was required to commence the prosecution of the charges. Hence, the trial court erred in denying defendant's motion to dismiss the charges on the ground that they were time barred.

Reversed.